Our fifth case for this morning is United States v. Perillo. Mr. Hillis. May it please the Court, Counsel. My name is Daniel Hillis. I'm with the Federal Public Defender's Office. I represent Renee Perillo. She raises two issues in this case. First, is that the district court abused its discretion when it denied her motion to withdraw her plea without addressing the entrapment and outrageous government conduct defenses that she presented. After being jailed for 18 months and being badly weakened during the process, Ms. Perillo signed a plea agreement. At the time, she didn't know that she had legal defenses and therefore was unaware that she could do what her new lawyer attempted to do for her, and that was to withdraw her plea. He entered... So, Mr. Hillis, talk to me for a minute about how one deals with a waiver of the right to appeal when we have this kind of motion to withdraw the plea agreement, which is denied. It's not a motion such as the ones we see in 2255 where somebody says there was ineffective assistance of counsel, it tainted the whole thing, you know, I'm out. So I want to know whether the waiver applies. It doesn't, Your Honor, because for the waiver to apply, there'd have to be a knowing and voluntary plea. And when the defendant in this case was unaware of her legal defenses, the Rule 11 colloquy would be inadequate to suffice, and the motion to withdraw then where the undisputed evidence is presented to the district court would trigger an obligation by the district court then to re-examine the validity of the plea, which is in fact what the district court did. But the district court looks at this, I mean, okay, maybe we get that far, but the district court says, what have you shown me to show that this wasn't knowing and voluntary? Oh, you said you lied during the entire plea colloquy that I went through before. That's not good enough. Right, but that does not address the legal defenses, right? So the judge was focused on did her answer satisfy the Rule 11 colloquy, but under Grohl, the judge had to do something different. The judge had to address whether or not, under the circumstances, there had to be an evidentiary hearing or he could dismiss the two defenses and address those in specific reasons. He didn't. Did the defense ask for an evidentiary hearing? The defense posited in the motion the facts that were necessary to obtain relief, and it was then the district court's responsibility to have the evidentiary hearing judge under Grohl. The court held a hearing. Not an evidentiary hearing, but yes. And what presentation did Ms. Perillo tell the district court she wanted to make that she was not allowed to make? I don't think that's what happened. I don't either. Right, and so it was incumbent under Grohl for the district court to do one of three things. To reject, with stated reasons, why the evidence was insufficient for her to now try to withdraw the plea based on the tendered defenses, or to allow an evidentiary hearing, right, and allow to withdraw the plea, hold the evidentiary hearing, deny the motion. Those were the three options under Grohl. The district court went for plan B, which was don't address any of the things, don't allow her to withdraw the plea, allow the plea to stand based on Rule 11 colloquy, but that doesn't do what is required under Grohl. But you know, when all is said and done, looking at the reasons that you're now raising, assuming we can get over all these trial-level problems, you're raising entrapment and you're raising outrageous government conduct. Entrapment seems to me an extraordinarily weak argument in light of everything she had done before she winds up in jail. You know, she's, she's, for her to say that she's not predisposed at the time that Ramos talks to her strikes me as very unpersuasive, I guess I'll say. And you rely on a rather old case on outrageous conduct, but in Boyd and a long line of cases since then, we've said that we don't have a freestanding theory to that effect in this case. But if I can address those, I'll take them in reverse order. The Supreme Court has said that there is a defense for outrageous conduct. The Supreme Court speculated that there might be in Russell. Your brief seems to assume that this is solid established law. I haven't seen a case that actually applied this yet. Do you? Well, the circuit authority that we cite is on one side of the ledger. The Supreme Court recognized the possibility of the defense. Recognize the possibility. Can you point me to a case that has dismissed a prosecution based on a theory of outrageous government conduct? No, but that doesn't discredit the defense in the country. No, Your Honor. However, all the circuits have acknowledged the existence of the defense. It doesn't mean that people like to kind of keep it off there. We haven't actually after Boyd, but sometimes you think, well, you know, maybe if fingernails are being ripped off, you know, or some awful thing is happening, you know, we don't want to totally rule that out. The fact is there would be an independent ground that you wouldn't need to reach some amorphous, outrageous conduct. So we all agree that's, and from Boyd forward, there hasn't been a hint in this court that we do recognize it. But what did Boyd do with respect to Kintel? It doesn't matter at this point. There's this long line of cases. You know, I don't know, but we didn't. And everybody, you know, has understood this to be the law for a long time. Well, Kintana, I understand to be the law too. It's not overruled. And so there is precedential value in Kintana. And then we depart. Not if there is this long line of cases, flatly inconsistent with it. Why don't you talk about entrapment? Because my thought is by the time she and her son have driven cross country, they've dug a grave, they've got the paralytic in the back of the car, they've got all the rest of this stuff. Then she winds up in jail and Ramos is somehow entrapping her into contacting the hit man? Please. So we have what Your Honor is doing, making findings or proposed findings, I suppose, were you the district court that would allow you to reject the defense. Under Grohl, that's what you have to do. The district court didn't do that. And so Your Honor is doing some analysis today that would be required by the district court. Is it your theory, Mr. Hillis, that a defendant has to know all potential legal defenses and strategies before she can plead guilty in a knowing and voluntary way? If there is a valid defense that she didn't know about, and I would point the court to Trussell on this, that would then discredit the voluntariness of the plea because there's no evidence to defend. A valid defense, you say? Well, entrapment certainly is and there may be evidence against. No, no. It's theoretically available. Yes. But, you know, when I would do plea colloquies, I'd ask whether the defendant has talked over potential defenses with her attorney. I don't explore what all those are. Are you satisfied that you've talked through all those things? If the answer is yes, then you can accept a plea. The notion that somebody is entitled to set aside a plea because somebody later comes up with a fairly far-fetched theory that was not addressed itself in the plea colloquy strikes me as a great way to undermine Rule 11 deals. I don't think so, Judge, because fair and just reason is what applies to the withdrawal of the plea. So if the defense didn't know about it at the time and then became aware of it later, I think your honor as a district court judge would have entertained what the facts were, what the law is to say if you didn't know but now you know and this is a valid defense or at least a marginal defense that's recognized. There's law that supports from different circuits. I think that that would be a different circumstance than saying across the board you have to know everything. I'm not asking for that. But you've already admitted to the government's factual basis for the plea. That's different from knowing defenses or anything. That's just what happened. Right, but that doesn't establish all the stuff that is pertaining to Ms. Ramos and with respect to the conduct in the jail which then resurrects the defenses, right your honor? Well, I don't know if it resurrects the defense. The question is, is there anything about Ms. Ramos that could have changed her situation vis-a-vis an entrapment defense? We'd know if we had an evidentiary hearing. Okay. There wasn't one. And so I'm closing in on a minute. I will just offer that the restitution issues that we say the government's focused on foreseeability, that's not what the benchmark is. It is about is there direct harm and there isn't with respect to giving away a vehicle. Why weren't those waived? Because it's plain air. They weren't waived. It wasn't something that they have done under Part of the appellate waiver of the sentence. It's part of the sentence. The appellate waiver is a more specific judge. So if we look at what... Does it cover all elements? Judge, the way that it was specified and we would say, you know, look to contract rules, contra proferentum, the way that the government, who's the drafter of all these plea agreements, constructed this, it addresses everything except for restitution. The restitution statute does not allow you to do this, assess restitution on a person for damages that were not directly attributable to the offense conduct and it wasn't here. Giving away a vehicle is not a harm. That's not direct harm. Installing a security system, same problem. And then the lack of a complete accounting encapsulates all of those same issues into a different type of problem. I'll reserve my remaining three seconds. Okay. I'll give you a minute. Mr. Reitz. May it please the court. Brian Reitz for the United States. I would like to make three general points, which I think somewhat overlap with the questions the court has asked. First of all, I think we have to start with the appeal waiver, which this court's precedents have clearly held that appellate waivers include motions to withdraw a guilty plea, so we think everything is waived. But there's a theoretical problem with that. I think it might depend on the ground because the guilty plea itself is what's being attacked. This isn't a situation where somebody's trying to pick and choose, you know, I like this part of the plea and not that part of the plea, which we're very clear on. You can't do that. But if you say, you know, to take an extreme instance, you know, somebody had a gun to my head, actually, when I pleaded guilty, and that's why I want to withdraw the guilty plea. And the judge, you know, maybe has video of the courtroom and says, Oh, actually, that's right. You know, I didn't notice that gun to the head before. Surely you don't have an appellate waiver in a situation like that. So let me answer that specifically and generally. Specifically, I can't imagine that the government would say if there was a video of the gun to a head, that wasn't grounds to get out of the appeal. I would hope not. I would hope not, too. But you never know. Maybe it was underneath the handkerchief. Right. So in that extreme scenario, I would just hope that the equities would point to withdrawing of the guilty plea. But the legal analysis is that there are situations in which the motion to withdraw the entire guilty plea and go back to square one, have a trial, whatever happened, strikes me as something where, logically, it's really quite similar to the ineffectiveness of counsel issue that we all agree lets you get out. That was actually going to be my general point. I think the problem here with Ms. Pirillo's claim is it's somewhat overlapped with that. I think a lot of the things she is saying are really ineffective assistance of counsel claims, and she can raise that on 2255. So there is still a mechanism to do the things, and I mean, frankly, I'm sure that we will see one. Isn't it wasteful? I mean, honestly, we have her attacking the entire plea. You're saying you'd rather us affirm now, wait for 2255, go through a whole other round with her. And if her lawyer really didn't tell her about some promising approach to this case, I'll say that broadly, then you might have a new trial on your hands. So I think to establish that, in general, one would have to have a hearing, and that's why we reserve these things to 2255. I would also point out that to the specific claim here, as Judge Hamilton mentioned, I don't think there's really any indication that necessarily an attorney has to tell a defendant about every conceivable but far-fetched defense. So I mean, if there was evidence that an attorney didn't tell a defendant about a specific and it's somewhat difficult to envision that coming up on direct appeal, but there is a mechanism and an avenue to do that. It's 2255. As Ms. Perillo has said, that maybe Jim Voiles, we find this far-fetched too, didn't prepare for trial. That is a great ground for 2255. As far as dealing with this on both direct and 2255, as a matter of fact, we essentially do that with almost every defendant anyway. So it's not really saving the government or the court system any work. Those things should be funneled to 2255, which is what this Court has always done. Moving on beyond the waiver, if the Court were to proceed to the merits, it's important to note that the district court below did comply with the rule. I know in the defendant's reply brief, they assert that it was an in-chambers hearing, but that's not right. The Court held an evidentiary hearing. The public was there. The victims were there. Evidentiary in your testimony, did he? Well, there was no testimony, I think, but that was incumbent upon Ms. Perillo. There was an evidentiary. There was a public hearing. There was a public hearing. It was not in chambers. It was an open court. We would classify that. I think it has to be classified as an evidentiary hearing. The fact of the matter is that There are plenty of public hearings that aren't evidentiary. Like this. Fair enough, but I think when the Court holds a motion to withdraw hearing based on the reasons But is there anything in the record that suggests the judge said, and give me your witness list if you want to put on any testimony about these matters? Not as far as I know. I don't think it's incumbent upon the district court judge to do that. District court gave Ms. Perillo with a second attorney, with her second attorney, an opportunity to put evidence before it, to put anything before it, and really what we have, I would encourage the court to read that hearing. It's really stream of consciousness complaints from Ms. Perillo. I don't think there's anything, like Judge Hamilton said, not only is there a lack of evidence, but there's a lack of any indication that there would be evidence. Never did her attorney or her say, we have this evidence, we could call these witnesses, this would support this. There is none of that. It is simply, again, stream of consciousness complaints that are mostly neither here nor there. Mr. Reitz, were either Mr. Voiles or Mr. Inman, or both, appointed through the CJA process or were they hired privately? Mr. Inman was appointed through the CJA process. Mr. Voiles was retained by, I believe, Ms. Perillo's boyfriend, Dr. Richard Ducco. And I think that kind of goes into the point three. We think it's telling in Ms. Perillo's lie brief on page one, where she says that on appeal, these are the arguments that she's making, which we would agree that on appeal, she's raising an entrapment claim, but that's not really what the district court was facing. The arguments and the assertions that Ms. Perillo made below to the district court judge, while we didn't raise forfeiture because we think they touch on entrapment, but what Ms. Perillo really was saying was that she lied during her Rule 11 colloquy. The district court judge did not err by treating it as such. Her claim was based on that more than anything, despite whatever complaint she had about Ramos. What it really got down to, she said that she lied in her Rule 11 colloquy. And this court has said time and time again, that is not a fair and just reason to withdraw from a guilty plea. Mr. Reitz, if we get to the restitution issues here, I've got to say, these seem kind of far-fetched. Yeah, I was going to say the same thing. Here's a hypothetical. This is about the car. Suppose instead of all of this happening in the car, suppose Ms. Imerman had a million-dollar condo in downtown Indianapolis and somebody invaded the condo and held her hostage for a while and she had a terribly traumatic experience, survived it. So she said, I'm going to give my million-dollar condo to my favorite niece. And so the niece gets the million-dollar condo. And then she comes in and says, and as restitution, I'd like a million dollars. Now, how can that be right? You can sell a car. You can sell a condo. You don't suffer just because it's traumatic for you to be there, even though I assume it was traumatic for her to be in the car. And I assume it might be traumatic in my condo hypotheticals. Let me preface this by saying, with that being said, and I think another preface, the million dollars, yes, we would agree that that would be far-fetched. But what's different in principle, though? I mean, the car, $10,000 is not chump change. She gives it away to a relative. Why is that a loss to her? Because I think we should not diminish mental anguish and loss. I think it's fair that she could have perhaps sold it. But even if she sold it, she would have at least theoretically taken a loss on it. Is mental anguish bodily injury to a victim? Which is what the statute says? Probably a stretch. I think that's... That's what we said in Breschers. We said we're not really sure about this. But it was a plain error standard in that case. I think we're under that here, too. But if the best you can do is psychological injury, you're skating on thin ice for some cases. Somebody's going to object. I think so. And I think if there had been an objection here more fleshed out, I think it's possible that the court would not have granted the restitution on that. And then we have the problem with the security system, where the government pipes up, you know, we're not going to talk about the security, you know, we don't have anything to say about it, something like that. Well, I think... We're not contesting the security system. That sounds like, well, okay, that's off the list. And then the judge winds up throwing it back in. I know I'm somewhat in a difficult position saying that I think the transcript is incorrect there. But I think read in context, the defendant never, ever objected to the security system. In fact... But why would you if the government... If you thought, as apparently the court reporter did, that the government wasn't contesting the security system, why would you waste the court's time? I think what the government was saying is there, as in Ms. Perillo is not contesting the security system. So there's... I think that is the better way to understand that. Because generally, you would not say we're not contesting something whenever we're the one putting it forth. Now, I know that the transcript says I understand that. I think in context, it's difficult to read it. I mean, in context, I don't think that is the best understanding of what we're saying. The government was arguing for restitution on everything. Ms. Perillo says we're contesting these two specific parts of the restitution, but not the security system. And the government is saying they're not contesting it, so we're not going to put any evidence on there. Now, I understand that the transcript says we are. But we think that's a transcription error in context of everything else. And I know my time's up, so I apologize. Okay. That's the best you can do. That's the best you can do. Thank you, Your Honor. Thank you very much. You have a minute, Mr. Hillis. Thank you, Your Honor. If the transcript says what it says and the government thought it said something different, do a Rule 10, order the audio, see what it says. But we're left with the transcript as it is. And I understand it to be the government was not contesting the amount that was then later awarded. So there's that. Government's brief. I didn't understand it to ever argue that this was an evidentiary hearing. So it seemed to be saying all along that the district court was correct to deny the motion and gave it adequate explanation. That's different. That's a different part of the role. So the government didn't argue what it's saying. It's arguing now, in my opinion. 2255 is not an exclusive avenue for relief. And those are awful hard to win. So we would like to take our shot now. And if we have to come back and argue 2255, so be it. But we shouldn't be precluded now from raising something just because she may have a chance to raise it again later in a different, more difficult context. And lastly, this was an evidentiary hearing. I would think that we would have had a list of people that we're going to hear from. And we would have heard from Mr. Boyle's informant Ramos, etc. There was information that was tendered through letters and through a motion that listed facts to support what the evidentiary hearing should have addressed. And it didn't happen. All right. Thank you very much. Thanks to both counsel. We'll take the case under advisement.